Desmond, J.
(dissenting). Three limitations on this court’s power forbid reversal of this judgment. First, our State Constitution (art. VI, § 7) denies to us any jurisdiction to review affirmed findings of fact; second, the United States Constitution’s First and Fourteenth Amendments make unlawful (Watson v. Jones, 13 Wall. [80 U. S.] 679) any interference by a State court with the internal affairs of a religious body; and, third, the United States Supreme Court in this very lawsuit (344 U. S. 94) has forbidden such interference by the New York courts with the appointment of this archbishop to this diocese of this cathedral by this Patriarch of Moscow. No one of these *219 restrictions is considered in the majority opinion. Bound as I am by each of them, I vote to affirm.
This is a suit in ejectment brought to decide the right of occupancy of the Russian Orthodox Cathedral in New York City. Each of two trials has resulted in findings and adjudications, affirmed by the Appellate Division on each occasion (276 App. Div. 309; 6 A D 2d 866), that the archbishop consecrated by the Patriarch was entitled as such to possession of this See church of the American archdiocese. This court reversed the first of those judgments (302 N. Y. 1) but the United States Supreme Court reversed us (by a vote of 8 to 1) on grounds which will be quoted in a later part of this opinion. After and despite the Supreme Court’s reversal, this court ordered a new trial. The issues of fact framed by us were then tried. Evidence was taken on both sides. Again, findings of fact were made in favor of defendants and again there was an affirmance by the Appellate Division of those findings and of that judgment. At that point our court under our State Constitution (art. VT, §7) had no further jurisdiction over the case, since the fact question which we had sent for trial (and which we had described as the only issue left in the case) had been, by the trial and Appellate Division affirmance, finally and forever settled in favor of the Patriarch’s appointee. Nonetheless, we granted leave to appeal to this court and are now reversing the judgment below because, as the majority opinion says, “ we are constrained to disregard any contrary findings of [fact] ”. There can be found no other decision in this court wherein we have taken to ourselves power to disregard affirmed findings of fact made on a resolution of a question of fact.
On the second appeal to this court we stated that the issue for trial and “ the determinative issue in the case ” was ‘ ‘ whether there exists in Moscow at the present time a true central organization of the Russian Orthodox Church capable of functioning as the head of a free international religious body ”. We had said exactly the same thing on the first appeal here (see 302 N. Y. 1, 22, supra; 306 N. Y. 38, 46) and the United States Supreme Court (344 U. S. 94, 106, supra) had quoted our language as stating the question of fact which our court thought should be tried. Our order for a new trial did *220 not specify the triable issue but the Trial Justice, of course, took these expressions from the opinions as being a mandate. He went ahead and tried the stated issue and, on conflicting proofs, decided it. He did not construe our opinions as licensing a choice by the New York courts between the Patriarch’s appointee and the priest chosen by the schismatic 1 ‘ Metropolitan District”. (Rejection by our courts of the Patriarch’s nominee for the archbishopric is the same kind of interference with religion of which we accuse the Soviet authorities.)
The Trial Justice, proceeding to the trial of the only issue discernible, took lengthy testimony from both sides on the question of whether, as of the date of the trial, ‘ ‘ the Patriarchate of Moscow is the head of a functioning religious order ”, After examining the opposing proofs he made a finding that the Patriarchate does so exist and does so function. Any other finding would be somewhat startling since the Patriarchate is recognized throughout the religious world (including recognition by the Vatican and by the World Council of Churches and by plaintiff itself) as being the de facto and de jure head of the world-wide Russian Orthodox Church.
The other two obstacles to a reversal here are pointed out in the holding of the United States Supreme Court that the power to appoint this archbishop is and always has been in the Patriarch. To quote (344 U. S. 94, 120-121, supra):
‘1 The record before us shows no schism over faith or doctrine between the Russian Church in America and the Russian Orthodox Church. It shows administrative control of the North American Diocese by the Supreme Church Authority of the Russian Orthodox Church, including the appointment of the ruling hierarch in North America from the foundation of the. diocese until the Russian Revolution. We find nothing that indicates a relinquishment of this power by the Russian Orthodox Church.
“ Ours is a government which by the ‘ law of its being ’ allows no statute, state or national, that prohibits the free exercise of religion. There are occasions when civil courts must draw lines between the responsibilities of church and state for the disposition or use of property. Even in those cases when the property right follows as an incident from decisions of the church custom or law on ecclesiastical issues, the church rule *221 controls. This under our Constitution necessarily follows in order that there may be free exercise of religion. ’ ’
Near the end of our court’s majority opinion on the present appeal, it is said that we are not interfering with the Patriarch’s right to select his clergy or appoint his archbishop but that any archbishop appointed by him may not occupy St. Nicholas Cathedral which, says the majority opinion, is “ dedicated ” to the use of the Metropolitan District, that is, the schismatic group represented by plaintiff. Of course, there is no proof of any such dedication. Like every other cathedral, this edifice is by dedication and by definition an Episcopal church — the archbishop’s church — and, since the Patriarch’s century-old power to appoint bishops to his church’s dioceses is undisputed, the cathedral can never be dedicated by anyone to any other use or trust. Its only dedication was in 1905 and no civil government can rededicate it. This idea of a dedication to plaintiff’s use (time, place and manner of dedication unexplained) is new in this case. If there had been any such dedication there would have been no reason for a new trial and nothing to try. The fact issue we ordered tried — that is, whether the Patriarchate is functioning in Russia as the ruling body of the Orthodox church — would have been quite immaterial if the right to use the New York cathedral had already passed, by some unexplained dedication, out of the Patriarch’s control and into that of plaintiff.
No Judge of this court is unaware of the professed atheism of communism or of the antireligious bias and activities of the Communist rulers of the U. S. S. R. Each of us as an individual deplores and abhors the cruel attacks of the Communist regime on religious institutions and on their clergy and communicants. But we sit here as a court deciding a lawsuit. The same jurisdictional and substantive rules control in this case as in every other one we hear. There are no exceptions for lawsuits against Communists. Neither the basic American constitutional prohibition against government interference in intra-denominational affairs nor our State Constitution’s jurisdictional controls exclude a case where a Communist-oriented or Communist-dominated Patriarch appoints a Communist sympathizer as archbishop.
The judgment should be affirmed, with costs.
*222 Judges Dye, Froessel and Van Voorhis concur with Chief Judge Conway; Judge Desmond dissents in an opinion in which Judges Fuld and Burke concur.
Judgment reversed, with costs in all courts, and judgment directed for plaintiff.